In re FLORIDA PEACH CORPORA-
TION OF AMERICA, INT., Debtor.

In re FLORIDA PEACH CORPORATION
OF AMERICA, INTERNATIONAL DI-
VISION, a Panamanian corporation,
Debtor.

Bankruptcy No. 86–1251.
Ancillary No. 83–50070.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 28, 1986.

Malka Isaak, Tampa, Fla., for Florida
Peach Corp.

Jeffrey W. Warren, Tampa, Fla., for Eli-
as Moron Arosemena.

Richard F. Mitchell, Tax Div., Dept. of
Justice, Washington D.C., Robert W. Mer-
kle, U.S. Atty., Tampa, Fla., for U.S.

ORDER ON MOTION TO DISMISS
CHAPTER 11 CASE and MOTION TO
REOPEN A CLOSED ANCILLARY
PROCEEDING AND TO APPOINT A
CO–TRUSTEE

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case which may
appear to have reached the end rather than
the beginning of its long and tortuous jour-
ney through the courts not only in this
country but also in the Republic of Pan-
ama. The debtor, Florida Peach Corpora-
tion of America, International Division
(Florida Peach), is a Panamanian corpora-
tion which has just slightly more connec-
tion with the Republic of Panama than a
"Mom-and-Pop" local corner grocery store
has with Outer-Mongolia. Its fortune, or
misfortune, depending upon who is making
the evaluation, was, and still is, guided by

the astute hand of one Robert Lurie (Lurie), a citizen of the United States, who directed its journey with great skill, using tools at times questionable, depending on which particular court was involved with the affairs of Florida Peach at any given time.

The particular matters presently under consideration are seemingly simple and ordinarily would not present any particular difficulty. However, because of the turbulent and highly unusual history of this particular Debtor and some others connected with it, one is caused to stop and reflect before disposing of the two motions under consideration, which are a Motion to Dismiss the Chapter 11 case and a Motion to Reopen a Closed Ancillary Proceeding and to Appoint a Co-Trustee. Both motions were filed by Dr. Elias Moron Arosemena (*Curador*), who was appointed Administractor [sic] (in the English translation, Curador in the original Spanish) by the Fourth Court of the Circuit of Panama, Civil Branch, for the estate of Florida Peach. After the conclusion of a hearing on these motions, the United States of America also filed a Motion to Dismiss the Chapter 11 case, or in the alternative, a Motion to Appoint a Trustee. In order to put the issues raised by the various motions in an understandable posture, a recap of the historical facts germane to the resolution of the matters under consideration should be helpful.

This international saga had its genesis and birth in the Republic of Panama, the place of incorporation of Florida Peach, on April 22, 1970. Mr. Robert Lurie, a citizen of the United States (Lurie) was and still is the chief executive of Florida Peach and appears to be either the sole or possible joint stockholder holding the outstanding shares of Florida Peach with his wife. Article Fifth of the Deed of Incorporation of Florida Peach provides, *inter alia*, that its domicile shall be in Panama but it may establish branches in other parts of the world (see Affidavit of Tomas H. Herrera D.). It is clear and it is without dispute that Florida Peach never had any actual meaningful presence in Panama, that it never maintained an actual functioning office in Panama, and that it carried on all of its business activities in countries other than the Republic of Panama. All of its tangible assets, primarily consisting of substantial land holdings are located in Florida, and all its financial transactions through which Lurie amassed substantial amounts of monies were collected from European investors, primarily from citizens of Sweden.

Beginning in 1971 and up to 1980, Lurie, using Florida Peach as the medium, embarked on an extensive undertaking of fund raising. This was accomplished by selling undivided "interests" in "peach planting" programs in properties described as "peach orchards." These "interests" were sold principally in Europe. The factual background of the activities, including the various transfers of the properties, was considered in detail by this Court and described in the case of *In re International Food Corp. of America*, 37 B.R. 22 (M.D. Fl.1983). Although this fact is somewhat shrouded in mystery, it appears that all of the collected funds are currently in banks in Switzerland and possibly in some offshore banks, all of which, not by coincidence, are protected by the secrecy laws of the respective countries. For this reason, so far no one has had any success in learning the extent of the funds on deposit, and these accounts have been inaccessible not only to the Curador, but also to those who claim to have valid interests in these funds, namely the United States of America who asserted a very substantial liability for unpaid taxes and, of course, all creditors of Florida Peach and those who have invested substantial amounts of monies in Florida Peach.

Shortly after its formation, Florida Peach, through a series of transactions, acquired several parcels of land located in Sumter and Marion Counties in Florida. These several parcels, collectively referred to as the Properties, are also known as the "Pedro Farm," the "Martin Farm," the "Belleview Farm," the "Hartman Farm,"

the "Coleman Farm," the "Lurie I Farm," and lastly, the "Lurie II Farm."

In 1974 or 1975, Lurie also formed another Panamanian corporation under the name of International Food Corporation (IFC), also a Debtor in a Chapter 11 case. Just as in the case of Florida Peach, Lurie was again the chief executive and the sole or possibly joint stockholder with his wife of all outstanding shares of IFC. In any event, just as in the case of Florida Peach, he was the person in sole control of the affairs of IFC from its inception until the present.

At its formation, IFC was nothing but an empty corporate shell. It had no assets, no employees, and did not carry on any business activities whatsoever. It is clear that Lurie did not observe even the most basic and elementary formalities required for a normal corporate existence, just as he did concerning the corporate affairs of Florida Peach. Although Lurie claims that some stocks were issued sometime later in his name as Trustee for unidentified and undisclosed beneficiaries, no one so far has been able to ascertain the identity of these alleged beneficial owners of the stocks. Be that as it may, there is nothing in this record which would warrant the finding that either Florida Peach or IFC kept any minutes of meetings of boards of directors simply because they had none, and it is equally clear that there are no records of any corporate resolutions or evidence of any meetings of either the shareholders or the directors of Florida Peach or IFC.

In addition to Florida Peach and IFC, Lurie also founded and incorporated the following associations and entities: Florida Peach Corporation of America, a Paraguain corporation; Florida Peach Corporation of America, Agricultural Services, a Panamanian corporation; International Food Corporation of America, a Delaware corporation; Florida Peach Corporation, American International Division Leasing Corporation; Transworld Food Corporation, N.V., a Netherlands Antilles corporation; Worldwide Agricultural Investors, Inc., a Florida corporation; AG Industries, Ltd., a Baha-mian corporation; Florida Peach Orchards, Inc., a Florida corporation; Florida Peach Co-Op, Inc., a Florida corporation; Florida Peach Corporation, a Florida corporation; Marion Orchards, Ltd., a Florida limited partnership; and the 1970 Planting Partnership, II in the Early Florida Peach Industry, a limited partnership. None of these entities engaged in any apparent business activity at any time except to serve as conduits for the several transfers of the Properties between the entities, all initiated and directed by Lurie.

Thus, beginning in 1971, Lurie, through a series of transactions, some orthodox, some less than orthodox, caused the titles to the Properties, which at that time comprised approximately 1,700 acres of prime land in central Florida, to be transferred first to Florida Peach as trustee, without disclosing the alleged beneficiaries (and as one might suspect the sole beneficiary was Lurie himself), and then by Florida Peach as trustee to the various and sundry entities mentioned above. Through all of these transactions the Properties were ultimately transferred to IFC. None of these transfers was supported by any consideration (See *In re International Food Corp. of America, supra,* at page 834).

On February 3, 1982, the Fourth Court of the Circuit of Panama, Civil Branch, entered a decree entitled "Declaration of Bankruptcy, No. 154," against Florida Peach. This was entered on a Petition for Declaration filed by Dr. Winston Robles (Robles y Robles) on behalf of one Ansgar Plate, a citizen of Sweden, an investor and creditor of Florida Peach.

The Declaration provided, *inter alia,* that the date of bankruptcy shall be December 29, 1981, that all books, papers, documents, and "deposits of all properties" (in the English translation) shall be attached, that all of the mail of Florida Peach shall be seized, and that all actions in any other courts shall be consolidated with that bankruptcy action (obviously, although it is not stated in the translation, the Declaration purported to refer to actions in which Florida Peach was involved). The Declara-

tion further stated that Elias Moron A. (which turned out to be Dr. Elias Moron Arosemena, Curador) shall serve as Administractor [sic] (in the English translation, Curador in the original Spanish) if he accepts the appointment. The Curador accepted the appointment and has served ever since in that capacity for the estate of Florida Peach.

On May 24, 1982, the Curador filed a petition to commence a Case Ancillary to a Foreign Proceeding in the Jacksonville Division of this District. On October 4, 1982, the Honorable George L. Proctor entered an order for relief by default in favor of the Curador and against Florida Peach pursuant to § 304 of the Bankruptcy Code. The order for relief authorized the Curador to institute appropriate proceedings to set aside and to avoid transfers of Properties of Florida Peach alleged to be fraudulent, to seek injunctive relief prohibiting any interference with the Properties of Florida Peach, and to seek to obtain turnover orders concerning the same Properties.

The Curador promptly filed a complaint and sought to invalidate the numerous and sundry transfers by Florida Peach to the various entities mentioned earlier and ultimately to IFC on the basis that they were fraudulent and also sought a decree reverting the title to the Properties to Florida Peach.

On March 11, 1980, a voluntary petition for relief under Chapter 11 was filed in the Jacksonville Division of this District by Florida Peach, Case No. 80–111; however, the voluntary Chapter 11 case of Florida Peach was dismissed on February 22, 1982, because Lurie failed to comply with procedural requirements of the Code. The ancillary case filed against Florida Peach remained on the Jacksonville docket but was later transferred to this Court, because on May 24, 1982, Lurie filed a voluntary petition under Chapter 11 on behalf of IFC in the Tampa Division of this District.

On September 14, 1982, IFC filed a complaint and sought authority to sell the Properties free and clear of all liens and encumbrances. The Rules of Procedure at that time, B.R. 701, required the institution of an adversary proceeding in order to sell Properties free and clear of liens. In that adversary proceeding, Adversary No. 82–702, IFC named as defendants the United States of America and all the entities which held mortgages on the various parcels comprising the Properties. The United States was named in the complaint because it appears that it already asserted a tax lien claim based on the jeopardy assessment against the Properties in the amount of $7,749,423.82 based on income and withholding taxes allegedly due and owing for the years 1974, 1975 and 1976.

On November 22, 1982, the Curador filed a motion and sought leave to intervene in this adversary proceeding. On December 20, 1982, this Court entered an order and authorized the Curador to intervene. The Curador promptly filed a counterclaim against IFC and also a crossclaim against all the other defendants named in the complaint asserting his claim of a fraudulent transfer of the Properties. On March 1, 1984, this Court entered an order and dismissed the ancillary case originally filed by the Curador in Jacksonville Division, which, as noted earlier, was later transferred to the Tampa Division. The dismissal was based on the finding that since the sole purpose of the ancillary case was to enable the Curador to assert a fraudulent transfer claim of the Properties on behalf of the estate of Florida Peach, and since he was permitted to intervene and represent his claim on behalf of the estate of Florida Peach, the maintenance of the ancillary case would have served no further purpose.

On January 6, 1986, this Court, after a full scale trial of the fraudulent transfer claim of the Curador, entered its final judgment and recognized the claim of fraudulent transfer of the Curador and declared that all the transfers of the Properties to IFC were fraudulent and voidable and ordered and declared that title to all the Properties, to be revested in Florida Peach. The final judgment reserved jurisdiction to consider the claim set forth in Count IV of the counterclaim and the crossclaim of the

Curador in which he sought a determination that all the intervening liens now on record encumbering the Properties, including the tax lien asserted by the United States of America attached after the Properties have been transferred, and therefore, the right of Florida Peach is superior to all other interests which attached after these transfers.

One might assume that this adverse judgment would have concluded not only this controversy, except for an appeal filed by IFC, Dist.Ct. No. 86-152-Civ-T-17(A), but also the Chapter 11 case of IFC simply because the judgment divested IFC of its only asset and IFC was left with no assets which possibly could have formed the basis for a reorganization. However, anyone who assumed that this was the end of IFC and Mr. Lurie's maneuvering either did not know Mr. Lurie, or certainly underestimated him if they assumed that he was ready to throw in the towel and was ready to give up his control of the Properties.

On December 10, 1985, after the completion of the trial of the fraudulent transfer claim of the Curador and before this Court actually entered its memorandum opinion and the final judgment, Lurie obtained an ex parte order, Sentencia No. 279, from a friendly Judge of the Fourth Circuit of the Republic of Panama, not, as one might suspect, from the judge who originally entered the Declaration of Bankruptcy No. 154. Sentencia No. 279 revoked the Declaration of Bankruptcy previously entered and noted that the juridical [sic] situation (in the English translation) be returned to its original state, which in effect purported to dismiss the Panamanian bankruptcy case of Florida Peach.

On January 6, 1980, the Curador for Florida Peach appealed Sentencia No. 279. This appeal is now pending before the First Superior Tribunal of the Republic of Panama.

Lurie wasted no time after the entry of the Sentencia No. 279 and immediately filed a Motion to Dismiss the counterclaim of the Curador with prejudice and also his crossclaim on the basis that since there is no longer a Panamanian bankruptcy case pending, same having been dismissed, Dr. Arosemena is no longer a Curador of any estate. Accordingly, so urged Lurie, the Curador no longer has standing to assert any claim for fraudulent transfer either against IFC or against anyone else.

The motion filed on behalf of IFC was heard in due course by this Court, and after having received submission by the parties of the applicable Panamanian law on the legal effect of filing the notice of appeal of Sentencia No. 279, this Court concluded that the bankruptcy case in Panama is still a viable, pending bankruptcy case; that Dr. Arosemena is still the duly appointed and functioning Curador for the estate of Florida Peach; and that the Curador has standing to assert and pursue his claim on behalf of the estate of Florida Peach. (See expert opinion by Dr. Winston Robles.) Dr. Robles cited Articles 1042 and 1047 of the Judicial Code of the Republic of Panama in support of the proposition that when a sentence is appealed in Panama, the jurisdiction of the lower court is suspended and transferred to the Superior Court, and until the appeal is resolved, the proceeding below will remain undisturbed.

At this point, it appeared that this ruling by the Court finally put to rest any further challenge by Lurie of the Curador's right to the properties. Unfortunately, the assumption that the Curador finally had clear sailing and would no longer be hampered by any further roadblocks by Lurie in his quest to regain the Properties for the estate of Florida Peach was totally unfounded. On the contrary, this turned out not to be the last round in the long on-going battle between the Curador and Lurie and in Lurie's so far successful efforts to keep the wolves at bay, preventing everyone from enforcing valid existing encumbrances against the Properties. This, lo and behold, to the surprise of everyone, on April 3, 1986, Lurie filed a voluntary Chapter 11, but at this time on behalf of Florida Peach, the original owner of all the Properties and whose representative, the Curador, was the successive plaintiff in the fraudu-

lent transfer action. Of course, one need not indulge in speculation and it requires no great imagination that this new Chapter 11 filed on behalf of Florida Peach by Lurie was strictly for the purpose of further frustrating parties who unsuccessfully sought to foreclose their mortgages over the years by invoking again the protection of the automatic stay imposed by § 362(a) of the Bankruptcy Code.

Needless to state, this bizarre turn of events prompted a flurry of motions and numerous inventive responses by Lurie. For instance, in order to prevent the Vista Bank of Marion County, the holder of a mortgage encumbering one part of the Properties, from prevailing on its Motion for Relief from Stay and proceeding to foreclosure against its security, Lurie urged that he now had a sale for the property, a sale to a yet to be revealed, unnamed, and mysterious buyer. When pressed for a disclosure of the identity of the buyer, Lurie stated that he is not at liberty to disclose the name of the buyer just as he was not at liberty to disclose over the years the identity of the beneficiaries of the so-called trusts he created, nor the locations of the funds collected by investors and allegedly deposited on behalf of some unidentified trust estates. This inability to come forward with full disclosure is even more puzzling because it is clear that he was and still is the only person with any access and control of the funds, collected from the investors, and the only person in possession of the facts relevant to the existence of these so-called trusts and the identity of the beneficiaries.

On February 29, 1986, the Curador filed his Motion to Reopen the previously dismissed ancillary proceeding, Case No. 82–3040, and also sought appointment of a co-trustee; the Curador also filed a Motion to Dismiss this current Chapter 11 case filed by Lurie on behalf of Florida Peach. The United States filed a Motion to Dismiss or, in the alternative, Motion to Appoint Trustee, and as noted, these are the motions under consideration.

Because the motions to dismiss the current Chapter 11 case brought into play the interpretation of the laws of the Republic of Panama, this Court directed the parties to submit by way of affidavits testimony of experts on the relevant laws of Panama on the question of Lurie's authority to file a Chapter 11 case on behalf of Florida Peach.

In support of his position, counsel for the Curador submitted the affidavits of Professor Yauda Kuzniecky and Dr. Winston Robles. Professor Kuzniecky is a practicing attorney in Panama and a Professor of Mercantile Law at the University Santa Maria La Antigua. Dr. Robles, who originally initiated the bankruptcy case in the Republic of Panama, is a practicing attorney in Panama and also a Professor at Universidad Santa Maria La Antigua, Panama; Florida International University, Miami, Florida, United States, and at Universidad de San Pedro Sula, Honduras; and Professor of Law at the University of Panama.

In support of its position, Florida Peach submitted the affidavit of Dr. Tomas H. Herrera D., a senior partner of the law firm of Galindo, Arias & Lopez who was also a Professor of Money, Credit and Banking at Universidad Santa Maria La Antigua from 1969 to 1976, and has, since 1974, taught Banking Law in the School of Law of the same University.

The submissions and the affidavits also included a translation of Arts. 581 up to and including 582 of the Civil Procedure Code of the Republic of Panama, and also Arts. 417 up to and including 424 and 1638 of the Commercial Code of the Republic of Panama. It is evident from the foregoing that the entire fate of this current Chapter 11 would depend on the resolution of the question whether or not Mr. Lurie can commence a Chapter 11 case in the United States Courts while there is a live and viable bankruptcy case pending in the Republic of Panama. This in turn would, of course, be determined not only by the controlling laws of the Republic of Panama but the interplay between those laws and the applicable provisions of the Bankruptcy

Code, specifically § 109, which governs generally the eligibility to be a debtor under the Bankruptcy Code.

Based on the affidavits on file, the Curador urges that under the applicable laws of the Republic of Panama and by virtue of the Declaration of Bankruptcy entered on February 3, 1982, by a Fourth Court of the Circuit of Panama, Civil Branch, he is the only authorized representative of the estate of Florida Peach, and that Lurie has no longer any authority to act on behalf of Florida Peach. The Curador urges that Lurie lacked the capacity to file a Chapter 11 petition on behalf of Florida Peach.. In any event, so contends the Curador, this Court should either reopen the closed ancillary case or at least appoint a "co-trustee" in order to permit the Curador to participate in the administration of the Chapter 11 case of Florida Peach.

In support of its Motion to Dismiss the Chapter 11 case, the Government urges that in 1981 the Internal Revenue Service (IRS), pursuant to a jeopardy assessment, filed a tax lien against Florida Peach in the amount of $7,749,423.82 for income and withholding taxes for the years 1974, 1975 and 1976, and since the value of the otherwise unencumbered interest of Florida Peach in its real property holdings is less than the tax lien claimed by the Government, Florida Peach has no equity which is to be protected.

In addition, the Government urges that in any event Florida Peach has no realistic basis to hope to effectuate a reorganization, and because of the prior conduct of Lurie repeatedly refusing to obey several orders of the courts of bankruptcy and obstructing all efforts of the Government to conduct a meaningful discovery, this Court should remove Lurie at once from the control of the affairs of Florida Peach and place the affairs of Florida Peach in the hands of a court-appointed trustee.

■ Considering these contentions seriatim, it should be noted at the outset that eligibility of Florida Peach to seek relief under Chapter 11 is controlled by § 109 of the Bankruptcy Code. Since Florida Peach is without doubt a business corporation, albeit a foreign corporation, it is clear that it can be a debtor under Title 11 because it has properties in the United States (§ 109(a)). This conclusion, however, does not end the inquiry, but merely leads to the ultimate question which is the capacity of Lurie to act on behalf of Florida Peach, a question which must be resolved by considering the laws of the Republic of Panama. This is so because Florida Peach is a Panamanian corporation and its corporate powers and existence are governed by the laws of the Republic of Panama.

To answer this question, this Court is called upon to consider and determine what the governing legal principles are on this question as they appear from the affidavits of the experts. Unfortunately, the affidavits submitted by the experts are less than clear and leave a lot to be desired. The affidavit of Prof. Kuzniecky states that he had examined the court files and the documents in the Panamanian bankruptcy case and considered Art. 1553, 1564 and 1569 of the Commercial Code of Panama, and Art. 1786 of the Judicial Code of Panama, and is of the opinion that Lurie is "disassociated" (in the English translation) and presently precluded from any powers to manage or dispose of the assets of Florida Peach. It also states that by virtue of Art. 1553 of the Commercial Code of Panama since the effective date of "Art. No. 154," Lurie no longer has any right of authority to exercise any powers on behalf of Florida Peach including the power to execute a petition to initiate a bankruptcy case in the United States.

The affidavit of Dr. Robles basically states the same opinion and concludes that by virtue of the Panamanian bankruptcy case, Lurie is powerless to act on behalf of Florida Peach and had no authority to file a voluntary petition under Chapter 11 in this Court.

In opposition to the position of the Curador, Florida Peach submitted the affidavit of Prof. Herrera. Prof. Herrera states in his affidavit that under the laws of the Republic of Panama, an insolvent may be

subject to and involved in different bankruptcy proceedings depending on the country where the assets of the insolvent are located. This is known as a concept of plurality of bankruptcies and is found in Art. 1642 of the Commercial Code of Panama which expressly deals with the situation when there are several bankruptcies pending involving a Panamanian insolvent. Prof. Herrera indicates that the Interamerican Treaty on Conflicts of Laws, also known as Codigo de Bustamante, ratified by Panama as per law 15 of 1928, also recognizes this concept. While this Treaty has not been ratified by the United States, this concept is recognized by the Courts of Panama. Professor Herrera states, citing Art. 82 of the Panamanian Civil Code, the domicile of the legal entity is the place where it has its address or administration unless specific provisions to the contrary are contained in its Articles of Incorporation. Prof. Herrera concludes that inasmuch as Florida Peach has no assets in Panama and conducts no administration in that country, the legal capacity of Florida Peach to function, although it is a Panamanian corporation, must be determined in accordance with the laws of the country where the corporation has its administration, or its "commercial domicile" [sic] (in the English translation), and not the laws of the Republic of Panama, citing Art. 82 of the Civil Code of Panama. Prof. Herrera also states that the fact there is a bankruptcy case pending in Panama does not legally impede the President of Florida Peach to file a bankruptcy petition in another jurisdiction, pursuant to Art. 520 of the Commercial Code which provides that the pendency of the bankruptcy does not imply a dissolution of the corporation. This section provides that the corporation shall continue in existence and that the members, directors, administrators and other corporate business shall continue functioning in conformity with the Deed of Incorporation.

Based on the foregoing, this Court is satisfied that pursuant to the laws of conflict of the Republic of Panama, the capacity of Florida Peach to institute a bankruptcy case in a foreign jurisdiction must be determined with reference to the laws of the jurisdiction where the petition for bankruptcy is filed and not with reference to the laws of the Republic of Panama. Thus, even if under the laws of the Republic of Panama, a Declaration of Bankruptcy divests the insolvent of all powers and prohibits its officers from dealing in any manner with the assets of the insolvent, it is clear that if the insolvent has "a commercial domicile" in a jurisdiction outside of the Republic of Panama, and so long as the insolvent has not been dissolved in its place of incorporation, in this instance the Republic of Panama (see Arts. 520 and 1628 of the Commercial Code of the laws of Panama), the insolvent may seek relief in any other jurisdiction if otherwise eligible for relief under the laws of that particular jurisdiction. Applying the foregoing legal principles to the facts involved in this case, this Court is satisfied that since Florida Peach is eligible to be a debtor under Title 11 by virtue of § 109(a) of the Bankruptcy Code, the Motion to Dismiss the Chapter 11 case, filed by the Curador, is without merit and should be denied.

In the alternative, the Curador requests that in the event the Chapter 11 case is not dismissed, this Court should order reopening the closed ancillary case. As noted earlier, the ancillary case initially filed by the Curador in the Jacksonville Division was authorized in order to permit the Curador to assert his claim of fraudulent transfer and to recover the Properties from IFC. Inasmuch as the Curador has already obtained a final judgment which revested the ownership of the Properties into Florida Peach, there is no longer any reason or justification to maintain an ancillary case. Moreover, as noted earlier, Sentencia No. 279 is currently on appeal in Panama, and in the event it is affirmed, the bankruptcy case in Panama will stand dismissed. If that occurs, the legal justification of maintaining an ancillary case is lost since there will not be a primary case which would justify the maintenance of an ancillary case.

The Curador requested an appointment of a co-trustee in the event his Motion to Dismiss is denied, and this request is equally without merit simply because there is no trustee appointed at this time in the Chapter 11 case of Florida Peach. Thus, it is evident that there cannot be a "co-trustee" to serve for the estate of Florida Peach. There is nothing in this record to warrant an appointment of more than one trustee, even if the Government's motion seeking the identical relief is granted. For the reasons stated, none of the relief sought by the Curador has any merit and therefore all motions must be denied.

■ This leaves for consideration a Motion to Dismiss the Chapter 11 case and the Motion to Appoint a Trustee filed by the Government. Considering the Motion to Dismiss first, there is no question and there is hardly any doubt that if Florida Peach ever will achieve a reorganization it has a tough road to haul. However, at this time, it is premature to conclude that its situation is hopeless and that Florida Peach has already reached the terminal stage of its economic life. Moreover, in any event, a conversion to a Chapter 7 liquidation case would be more appropriate under the facts of these cases. This record is replete with facts, well established in the case of IFC, facts which cry for an intensive inquiry and investigation into the affairs of Florida Peach, and particularly for an in-depth investigation into the various nebulous, if not totally mysterious, dealings of Lurie over the years concerning the affairs of Florida Peach.

■ This leads to the last point to be considered, which is the Government's request to appoint a trustee. Having concluded the dire need for a pervasive in-depth inquiry and investigation, it is clear that a neutral and independent person ordinarily should be appointed to take over the affairs of Florida Peach even if Florida Peach remains in Chapter 11. This is so because it is quite unlikely that the current management of Florida Peach, that is, Lurie, would be eager and anxious to conduct the investigation necessary to untangle and sort out the affairs of Florida Peach. Unfortunately, however, it is clear, at least at this time, that there are no visible funds available that would assure compensation to a trustee if one were appointed. Furthermore, it is without dispute that Florida Peach does not conduct any business or carry on any commercial activity at this time, does not buy or sell goods, or render any services, and Florida Peach therefore does not need a trustee to carry on its affairs.

Based on the foregoing, it appears to be more appropriate to appoint an examiner pursuant to § 1104(b)(1) with a proviso that the debtor, Florida Peach, shall pay the amount fixed by this Court as the compensation for services rendered by the examiner and deposit in the registry of this Court the sum of $5,000.00, subject to further increase or refund, within 10 days of the date of the entry of this Order. It is further provided that in the event the debtor fails to comply with the foregoing, the Court will reconsider the Motion to Dismiss, dismiss this case, and reopen the closed ancillary proceeding, or this Court will convert the Chapter 11 case to a Chapter 7 case, whichever appears to be more appropriate. Based on the foregoing, it is

ORDERED, ADJUDGED and DECREED that the Motion to Reopen the Closed Case and to Appoint a Co-Trustee and the Motion to Dismiss filed by Dr. Jose Arosemena, Curador, be and the same are hereby denied. It is further

ORDERED, ADJUDGED and DECREED that the Motion to Dismiss the Chapter 11 case filed by the United States of America be, and the same is hereby denied. It is further

ORDERED, ADJUDGED and DECREED that the Motion to Appoint a Trustee filed by the United States of America is granted and this Court will enter a separate order appointing an examiner to serve in the Chapter 11 case of Florida Peach, in the event Florida Peach deposits the sum stated in the registry. It is further

ORDERED, ADJUDGED and DE-CREED that in the event the debtor fails to make said deposit as ordered in the previous paragraph, this Court will reconsider the Motions to Dismiss, dismiss this Chapter 11 case, and reopen the ancillary proceeding, or will convert the Chapter 11 case to a Chapter 7 liquidation case.